IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LEONARD KIDD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 11 C 7436 |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff Gladys Fountain's (Fountain) and Defendant Social Security Administration's (SSA) motions for summary judgment are denied, and Fountain's alternative motion to remand is granted. This matter is remanded to the SSA for further proceedings consistent with this opinion.

**BACKGROUND**

Fountain contends that her alleged onset date of disability is December 9, 2006 (AOD), and that her medical impairments include heart problems, high blood pressure, depression, anxiety, schizophrenic behavior, back pain, and arthritis in her

1

legs, knees, and arms. Fountain indicates that on the AOD, she was 50 years old, and that prior to the AOD, she had worked as a Machine Operator for approximately sixteen years. Fountain filed concurrent applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 7, 2007. Fountain's applications for DIB and SSI were both denied on January 25, 2008, and again upon reconsideration on July 8, 2008. Fountain timely requested a hearing, and on January 7, 2010, a hearing was held before an administrative law judge (ALJ), at which Fountain testified. On February 25, 2010, the ALJ denied Fountain's DIB and SSI claims, finding that Fountain was not disabled and that she retained the residual functioning capacity (RFC) to perform light work. Fountain timely filed a Request for Review with the SSA's Appeals Council, which was denied on August 19, 2011. On October 19, 2011, Fountain filed the instant appeal from the ALJ's ruling. The parties have now filed cross-motions for summary judgment.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's" RFC "and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, he is not disabled." *Id.*

In the instant action, Fountain argues that the ALJ erred: (1) by failing to acknowledge at step two of the inquiry that Fountain's mental health problems are a severe impairment, (2) by making an improper credibility determination, and (3) by making an improper RFC determination.

I. Assessment of Mental Impairment

Fountain argues that the ALJ erred by failing to recognize that Fountain's mental impairment constitutes a severe impairment, and by failing to render an

3

appropriate RFC based on the combination of Fountain's severe physical and mental impairments. The Supreme Court has recognized that the impairment severity regulation in step 2 is "a *de minimis* screening device. . . ." *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990)(citing *Bowen v. Yuckert*, 482 U.S. 137 (1989)); *see also Hughes v. Astrue*, 2011 WL 5867978, at *10 (N.D. Ill. 2011)(stating that "[t]he severe impairment requirement has been termed a *de minimis* requirement designed to weed out frivolous claims"). In the instant action, the ALJ found that Fountain has the following severe impairments: arthralgia with joint discomfort and back pain; hypertension, controlled on medication, not always compliant; and obesity. . . ." (AR 17, 24). The ALJ did not list Fountain's mental impairment as a severe impairment. (AR 17, 24). Nor did the ALJ provide an adequate justification in step two of the analysis explaining why she determined Fountain's mental impairment to be nonsevere. (AR 24).

In finding Fountain's mental impairment to be nonsevere, the ALJ indicated that she substantially relied on the "Paragraph B" criteria, found at 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00 *et seq.* (AR 24). With respect to such criteria, the ALJ stated that "the evidence shows that [Fountain] has only mild limitations in her activities of daily living, social functioning, and concentration, persistence or pace," and that Fountain "has experienced no episodes of decompensation of extended duration." (AR 24). In coming to such conclusions, the ALJ merely noted that Fountain "testified that she did not seek follow up treatment for her mental impairments because she was feeling better," and that Fountain's "mini mental status

4

examination at her consultative examination was within normal limits." (AR 24).

In the first instance, the court notes that Fountain's actual testimony indicates that she did not return to Stroger Hospital for mental health treatment after June 2009 for a variety of reasons, including that the psychiatrist she was seeing left the hospital, that Fountain "*thought* [she] was doing better, because [she] had stopped [or reduced] the medication," and that she instead returned to her treating physician, Dr. Antonio Senat, M.D. (Senat), to further address her mental health problems. (AR 62-63)(emphasis added). The record does not reflect that the ALJ adequately considered all of the reasons presented by Fountain for her failure to seek follow-up mental health treatment before concluding, largely on that basis, that Fountain's mental impairment was nonsevere. *See* SSR 76-7p (stating that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record"). Although the SSA now offers post hoc justifications relating to why the ALJ may have rejected Fountain's explanations for failing to seek further mental health treatment, the ALJ gave no such justifications with respect to the issue.

In addition, the "mini mental health status examination" substantially relied upon by the ALJ at Step 2 was performed in November 2007 by Dr. Chirag Patel, M.D. (Patel), who observed Fountain on one occasion for approximately thirty minutes, focused his examination on Fountain's physical complaints, and merely noted that Fountain's "orientation, memory, appearance, behavior, and ability to

5

relate during the examination were entirely within normal limits." (AR 268-271). In contrast to that evaluation, the record indicates that Senat, Fountain's treating physician for many years, indicated in 2007 that Fountain suffered from Depression and that Fountain has been on anti-depression medication since 2005. (AR 256). Senat also reported in 2007 that Fountain suffers from a depressed mood, exhibits schizophrenic behavior, may experience a flat affect when depressed, has problems with focus, memory, and cognitive tasks, and that she may not be able to cope well with work-related activities. (AR 259-261). Although the ALJ explained in some detail her rationale for rejecting Senat's opinion relating to Fountain's schizophrenia or schizophrenic behavior, the ALJ failed to adequately address Senat's statements relating to Fountain's depression and anxiety, or to address other parts of the record relating extensively to Fountain's mental impairment.

For example, as noted above, Senat indicates that Fountain was being treated for depression as early as 2005. (AR 256). In addition, the medical records indicate that in May and June 2009, Fountain was referred to Stroger Hospital Psychiatry Department based on her history of depression and anxiety. (AR 320-21). Further, during a May 11, 2009 examination, Dr. Brenda Jefferson-Byrd, M.D. (Byrd), performed a mental status examination of Fountain, including a depression screening, and indicated that Fountain had recently been bothered by depression, anxiety, suicidal ideation, mental disturbance, hallucinations, and paranoia. (AR 325). Byrd also noted that Fountain was requesting medication "to help her sleep" and indicated that Fountain's depression was deteriorating. (AR 324). The medical record also

6

indicates depression, crying spells, anxiety, difficulty focusing, difficulty making decisions, problems with sleep and appetite, decreased interest, decreased motivation, and decreased energy. (AR 390). Although the ALJ attributed many of the above symptoms to the death of some of Fountain's family members, the ALJ did not adequately address Fountain's long history of mental health problems or Dr. Byrd's finding that Fountain was suffering from mental disturbance, hallucinations, and paranoia. Further, Fountain testified to stress-related cardiovascular and respiratory distress, emotional problems that caused her to stop driving, and sleep problems, (AR 45-47, 51, 64), which the ALJ did not discuss. Based upon all of the above, the ALJ failed to adequately address relevant evidence in the record and the ALJ failed to properly explain the basis for her findings at step 2 of her inquiry. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)(indicating that an ALJ must "build the requisite 'logical bridge' between the evidence and her conclusion")(quoting *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)(stating that "although the ALJ need not discuss every piece of evidence in the record . . . the ALJ may not ignore an entire line of evidence that is contrary to the ruling," and that "[o]therwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence").

    The SSA argues that even if the ALJ erred, the error was harmless since the ALJ found that Fountain had other severe impairments. However, as Fountain correctly points out, Fountain's RFC reflected an accommodation by the ALJ only

7

for "grief and sadness" due to Fountain's loss of various family members, and did not take into consideration Fountain's mental health history or other psychological complaints. (AR 27). Thus, any error relating to Fountain's mental impairment was not harmless. The ALJ had a duty to "develop a full and fair record" in regard to Fountain's mental impairment. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)(stating that "[f]ailure to fulfill th[e] obligation" to develop a "full and fair record" constitutes "'good cause' to remand for gathering of additional evidence"); *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008)(indicating that at Step 2, the ALJ's "decision must elaborate on significant medical history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the mental impairment's severity"). On remand, the ALJ and the parties should more fully develop the record regarding the extent and severity of Fountain's mental impairment.

II. Credibility Determinations

Fountain also argues that the ALJ erred in making certain credibility determinations. Although an ALJ's credibility determinations are given deference, that deference is "not unlimited. . . ." *Shauger*, 675 F.3d at 696 (stating that "[t]he ALJ must consider a number of factors imposed by regulation . . . and must support credibility findings with evidence in the record"); *see also Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)(stating that a court will reverse "[a]n ALJ's credibility determination only if the claimant can show it was 'patently wrong'"). The ALJ

8

found that Fountain's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible. . . ." (AR 26).

In support of her finding, the ALJ noted Fountain's last employment position as a heavy laborer and that Fountain testified that she "stopped working because business was slow at the company," not because "she could no longer perform her job duties." (AR26). However, Fountain's honest testimony regarding the reason she was given for her termination actually weighs in favor of finding her testimony credible. In addition, as the ALJ noted, Fountain indicated in her testimony that toward the end of her employment she frequently had to take time off work for doctors appointments. (AR 26). The ALJ should have inquired into the frequency, severity, and nature of Fountain's medical problems during that time before determining that Fountain's termination was solely due to a slow down at the company, as opposed to an inability to perform her job, and before making an unfavorable credibility determination.

The ALJ also indicated that she believed that Fountain "exaggerates the difficulty she experiences performing household chores" and that Fountain "refused to cooperate with a treadmill exercise test." (AR 26). The ALJ based these findings on the 2007 examination by Patel. (AR 27). However, the ALJ failed to address Patel's findings in 2007 that Fountain was limited in her ability "to ambulate or stand for any prolonged periods of time" and "to hold heavy objects for long periods of time," or the fact that Fountain's impairments may have worsened over time. (AR

9

271-72).

In addition, in assessing Fountain's credibility, the ALJ relied upon "the absence of ongoing treatment by a mental health professional." (AR 27). As discussed above, the ALJ should explore all the potential reasons Fountain failed to seek ongoing mental health treatment before using such a fact to support a negative credibility finding. The ALJ's credibility determinations are not patently wrong, however they are not fully developed. Since this action will be remanded, the ALJ should take the opportunity to reevaluate the evidence as it relates to Fountain's credibility, to further develop the record, and to collect new evidence as needed.

III.  RFC Determination

Fountain argues that the ALJ also erred by making an improper RFC determination. The ALJ found the following RFC: "lift/carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours in an 8 hour workday and stand/walk for 6 hours in an 8 hour workday with a sit/stand option; unlimited pushing and pulling; occasional climbing of stairs, and stooping, crouching, crawling and kneeling; no ladders; difficulty grasping moving objects; sit/stand option; off task 10-15% of the workday; and absent one day per month." (AR 25). As with an ALJ's other findings, in determining an applicant's RFC, the ALJ must adequately explain the basis underlying the ALJ's findings. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(concluding that the ALJ "failed to build the accurate and logical

bridge from the evidence to his conclusion" in regard to the RFC "so that, [a reviewing court could] assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review")(internal quotations omitted)(quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). As discussed above, on remand, the ALJ should revisit her findings regarding the severity of Fountain's mental impairment and Fountain's credibility, as such findings relate to the RFC determination.

In addition, in the instant action, the ALJ stated that she gave the opinion of Dr. Hugh Savage, M.D. (Savage), the testifying medical expert, "great weight because it is consistent with the medical evidence of record and thoroughly explained," and that she did not give Senat's opinions controlling weight for various reasons. The ALJ also indicated that she gave the Disability Determination Services (DDS) physical RFC findings "substantial weight because they are consistent with the medical evidence of record," and that she gave the DDS psychiatric review technique findings "substantial weight because they are consistent with the medical evidence of record and [Fountain's] lack of consistent treatment." (AR 28). The ALJ fails, however, to adequately explain her cursory statements as to the weight she assigned to Savage's opinion and the DDS opinions. The ALJ must offer more than conclusory statements such as that the opinions of Savage and the DDS are "supported by the objective medical evidence." (AR 28). On remand, the ALJ must adequately discuss the opinions of Savage and the DDS and adequately justify the

11

extent of her reliance upon such opinions.

Based on the above, although Fountain has not shown that the record conclusively establishes that her claims should be granted, Fountain has shown that the ALJ failed to properly address all aspects of the five-step analysis in her decision and failed to adequately develop the record. Therefore, Fountain's motion for summary judgment is denied, her alternative motion to remand is granted, and SSA's motion for summary judgment is denied.

## CONCLUSION

Based on the foregoing analysis, Fountain's and SSA's motions for summary judgment are denied and Fountain's alternative motion to remand is granted. This matter is remanded to the SSA for further proceedings consistent with this opinion.

 _____
 Samuel Der-Yeghiayan
 United States District Court Judge

Dated: October 30, 2012